IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRELL HALE, | No. 4:25-CV-01901 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MS. GETZ, | |
| Defendant. | |

**MEMORANDUM OPINION**

FEBRUARY 12, 2026

Plaintiff Terrell Hale filed the instant *pro se* civil rights lawsuit alleging constitutional violations by prison officials at the Federal Correctional Institution, Allenwood Low (FCI Allenwood Low), in White Deer, Pennsylvania. He asserts claims for money damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Hale fails to state a claim for relief and granting leave to amend would be futile, the Court will dismiss this *Bivens* action with prejudice.

## I. BACKGROUND

In July 2025, Hale lodged the instant civil rights lawsuit in this Court.[1] At that time, Hale was incarcerated at FCI Allenwood Low,[2] and filed this action

---

[1] *See* Doc. 1 at 8, 9.
[2] *See id.* at 2.

pursuant to *Bivens v. Unknown Named Agents of the Federal Bureau of Narcotics*.[3] Hale has since been transferred and is currently incarcerated in FCI Ashland, located in Ashland, Kentucky.[4]

In his lawsuit, Hale recounted a host of complaints regarding several unrelated incidents by different FCI Allenwood Low officials. He first alleged that Physician's Assistant J. Stoltz "refused to help [him] with his complaints" regarding lack of sleep by declining to perform a sleep study, changing his mental health medication doses "without informing him," calling him derogatory names like "fat," and failing to properly diagnose his "sleep-wake disorder(s) pursuant to the DSM-V."[5]

Hale next alleged that mailroom clerk B. Stroble failed to comply with certain BOP policies concerning incoming legal mail. He asserted that Stroble improperly opened his legal mail and copied its contents, refusing to let Hale sign for it.[6] He further averred that Stroble waited two weeks to notify him of his incoming legal mail, "causing unnecessary hurdles" in his legal proceedings.[7]

Hale then alleged that case manager Ms. Getz "made derogatory remarks" to him, telling him to "suck a dick" when he attempted to discuss his possibilities of

---

[3] *See id.*
[4] *See* Doc. 10.
[5] Doc. 1 at 3-4.
[6] *Id.* at 4.
[7] *Id.*

Second Chance Act placement.[8]  When Hale reported this conduct to the Warden, Getz allegedly retaliated against him by placing him in "refusal status" for the Inmate Financial Responsibility Program (IFRP), which negatively affected his ability to earn credits under the First Step Act, phone credits, and a $50 incentive for completing 500 programming hours.[9]  Hale also alleged that Getz further retaliated by intentionally miscalculating his finances in an effort to improperly increase his IFRP payments.[10]

    In his fourth claim, Hale alleged that psychiatrist Dr. S. Antonucci provided deficient mental health care.  He claimed that Dr. Antonucci improperly changed Hale's mental health diagnosis, declined to see him on several occasions when he was having suicidal thoughts, gave him "self[-]care treatment" and internet printouts from various websites instead of appropriate clinical advice, and would log a full hour of treatment but only provide 30 minutes of care.[11]

    Finally, Hale alleged that Dr. C. Schmidt, the "Drug Abuse Program Coordinator," also provided deficient mental health care.  He claimed that Dr. Schmidt refused to speak with him on several occasions even though he was aware of Hale's mental health diagnoses, kicked him out of a psychology program, put him in program refusal status when Hale refused to return to the program, and

---

[8]   *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.* at 4-5.

retaliated against him when he challenged Dr. Schmidt's refusal-status designation by putting him in the Special Housing Unit through a fraudulent incident report.[12]

Hale additionally alleged that Warden J. Greene knew of the deficient medical care and "did nothing about . . . the unlawful acts of his staff."[13] He thus appears to contend that Warden Greene is equally responsible for the purportedly unconstitutional medical treatment.

As reflected above, Hale's complaint primarily concerns what he believed to be constitutionally deficient medical care at FCI Allenwood Low. His claims against Warden Greene, PA Stoltz, Dr. Antonucci, and Dr. Schmidt were therefore properly joined together in the same lawsuit, as they concern the same "series of transactions or occurrences" and contain a "question of law" that is common to all four Defendants.[14]

Hale's unrelated claims against Stroble and Getz do not provide a basis for permissive joinder. The allegations underlying his *Bivens* claims against Stroble and Getz are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying his medical care claims, nor is there a "question of law or fact common to all defendants" such that these claims and defendants could be permissively joined together in one action.[15]

---

[12] *Id.* at 5.
[13] *Id.* at 6.
[14] *See* FED. R. CIV. P. 20(a)(2) (discussing requirements for permissive joinder of defendants).
[15] *See id.*

4

Accordingly, the Court gave Hale the option of voluntarily dismissing his claims against Stroble and Getz or severing the instant case into three separate *Bivens* actions.[16] Hale chose severance,[17] so the Court severed the case into three separate actions (4:25-cv-01242, 4:25-cv-01900, and 4:25-cv-01901).[18]

As such, the only claims in this case—4:25-cv-01901—are Hale's *Bivens* claims against Getz concerning alleged retaliation and inappropriate and offensive language. Because Hale's retaliation claims haven been explicitly rejected by the Supreme Court of the United States, and because any other potential claim against Getz would represent an extension of *Bivens* and that extension is not warranted, the Court will dismiss Hale's complaint against Getz with prejudice.

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[19] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[20] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to

---

[16]   *See Hale v. Greene*, No. 4:25-cv-01242, Doc. 10 at 4-5 (M.D. Pa. Sept. 23, 2025) (Brann, C.J.).
[17]   *See id.*, Doc. 11 (M.D. Pa. Oct. 3, 2025) (Brann, C.J.).
[18]   *See id.*, Doc. 13 (M.D. Pa. Oct. 9, 2025) (Brann, C.J.).
[19]   *See* 28 U.S.C. § 1915A(a).
[20]   *Id.* § 1915A(b)(1).

5

screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[21]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[22] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[23] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[24]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[25] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[26] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal

---

[21] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[22] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[23] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[24] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[25] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[26] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[27] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[28] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[29]

Because Hale proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[30] This is particularly true when the *pro se* litigant, like Hale, is incarcerated.[31]

## III. DISCUSSION

Upon review of the *Bivens* claims directed against Getz, it is clear that dismissal is required. Hale's *Bivens* claims alleging First Amendment retaliation have been expressly rejected by the United States Supreme Court. And any other *Bivens* claim he is attempting to assert against Getz—likely under the Eighth Amendment—represents an extension of *Bivens* that is not warranted under the present circumstances.

---

[27] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[28] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[29] *Iqbal*, 556 U.S. at 681.
[30] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[31] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### A.     First Amendment Retaliation *Bivens* Claims

Most of Hale's allegations against Getz sound in First Amendment retaliation. The Court need not spend substantial time on Hale's *Bivens*-based retaliation claims. In 2022, the Supreme Court of the United States explicitly held that "there is no *Bivens* cause of action for [a] First Amendment retaliation claim."[32] That definitive pronouncement by the nation's highest court is the end of the matter for Hale's attempt to seek damages for alleged retaliation by Getz. The Court, therefore, must dismiss Hale's individual-capacity *Bivens* retaliation claims against Getz under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### B.     Other *Bivens* Claim

Hale also appears to assert an Eighth Amendment claim against Getz based on her "derogatory remarks" and her use of profanity.[33] Initially, the Court observes that Hale's allegations fail to plausibly state an Eighth Amendment violation. In general, conduct like verbal harassment, threats, taunting, and profanity, without any injury, is insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment.[34]

---

32   *Egbert v. Boule*, 596 U.S. 482, 498-99 (2022).
33   *See* Doc. 1 at 4, 8.
34   *See Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); *see also Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012)

8

Second, even if Hale had plausibly alleged an Eighth Amendment claim against Getz regarding her conduct, that claim would represent an unwarranted extension of the *Bivens* remedy.

In 1971, the Supreme Court of the United States held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures.[35] Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations. First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who had failed to provide adequate medical treatment to an asthmatic inmate.[36] "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in

---

(collecting cases); *Graham v. Main*, Civil Action No. 10-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."); *Mohamed v. Aviles*, Civil No. 06-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

[35] *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017); *Bivens*, 403 U.S. at 397.
[36] *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).

which the Court has approved of an implied damages remedy under the Constitution itself."[37]

Over the years that followed, the Supreme Court has "consistently refused to expand *Bivens* actions beyond these three specific contexts."[38] The Supreme Court has specifically noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[39]

In *Ziglar v. Abbasi*, the Court provided a "restrictive, two-step framework for courts to follow when analyzing *Bivens* claims."[40] First, courts must determine whether the case presents a "new context," *i.e.*, if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."[41] The Supreme Court has defined "new context" broadly,[42] explaining that "even a modest [*Bivens*] extension is still an extension."[43] A *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[44]

If the case presents a new context, courts must then consider whether special factors counsel against extending the *Bivens* remedy.[45] If so, the court must reject

---

37 *Abbasi*, 582 U.S. at 131; *see also Egbert v. Boule*, 596 U.S. 482, 492 (2022).
38 *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).
39 *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).
40 *Mack*, 968 F.3d at 317.
41 *Id.* (alteration in original) (quoting *Abbasi*, 582 U.S. at 139).
42 *See id.*
43 *Abassi*, 582 U.S. at 147.
44 *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).
45 *See Mack*, 968 F.3d at 317 (citing *Abbasi*, 582 U.S. at 136).

10

the requested extension.[46] The Supreme Court has clarified that courts are required "to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action."[47] If the court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist.[48] There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns."[49] Indeed, the United States Court of Appeals for the Third Circuit has held that the existence of an alternative remedial structure—like the Federal Bureau of Prisons' Administrative Remedy Program (ARP)—is a "special factor" that can create a new context at step one of the two-step analysis.[50]

Hale's Eighth Amendment claim against Getz presents a new context and special factors counsel against extending the *Bivens* remedy here. Hale's claim that Getz made derogatory remarks toward him and used profanity is clearly a different context than any of the *Bivens* trilogy set forth above. The Supreme

---

[46] *See id.* (citing *Hernandez*, 589 U.S. at 102).
[47] *Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024) (quoting *Egbert*, 596 U.S. at 492).
[48] *Hernandez*, 589 U.S. at 102.
[49] *Mack*, 968 F.3d at 320 (internal quotation marks omitted).
[50] *See Muniz v. United States*, 149 F.4th 256, 263-64 (3d Cir. 2025); *Kalu v. Spaulding*, 113 F.4th 311, 327-28 (3d Cir. 2024). *But see Muniz*, 149 F.4th at 266-67 (Restrepo, J., concurring) (disagreeing with approach taken in *Kalu v. Spaulding* and observing that Seventh, Ninth, and Tenth Circuits consider "alternative remedial structures" only at step two, not as part of step one, which better aligns with the Supreme Court's approach in *Egbert* and *Goldey v. Fields*, 606 U.S. 942 (2025)).

Court of the United States has never recognized an implied damages remedy for an Eighth Amendment claim involving derogatory remarks and profanity by prison officials. Moreover, the availability of the BOP's administrative remedy program—which was not in existence when *Bivens*, *Carlson*, and *Davis* were considered by the Supreme Court—further implicates a new *Bivens* context here.[51]

The second step in the *Bivens* analysis asks whether special factors counsel against extending the *Bivens* remedy. The Court answers this question in the affirmative. Specifically, a *Bivens* extension is unwarranted here primarily because there are alternative remedies available.

As the Third Circuit has repeatedly noted, the availability of the BOP's administrative remedy program often provides an alternative to a federal *Bivens* lawsuit.[52] Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring."[53] And even if Hale's attempts to resolve his Eighth Amendment claim through the administrative process were ultimately unsuccessful, he had access to at least "some redress," and therefore the Court finds—as in *Mack*—that the BOP's administrative remedy program offers a

---

[51]   *See Muniz*, 149 F.4th at 263-64; *Kalu*, 113 F.4th at 327-28.
[52]   *See Muniz*, 149 F.4th at 264-65; *Dongarra v. Smith*, 27 F.4th 174, 181 (3d Cir. 2022); *Mack*, 968 F.3d at 320-21.
[53]   *Mack*, 968 F.3d at 321.

"convincing reason" to refrain from extending *Bivens* to an Eighth Amendment claim like the one asserted by Hale.[54]

In sum, Hale fails to plausibly allege an Eighth Amendment claim against Getz. Even if he could allege such a constitutional claim for derogatory remarks and profanity, that Eighth Amendment claim would extend *Bivens* to a new context, yet special factors counsel against this extension. The Court will therefore dismiss Hale's individual-capacity *Bivens* Eighth Amendment claim against Getz pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### C. Official Capacity Claim

Hale purports to sue Getz in both individual and official capacity.[55] However, a suit against a federal officer in his or her official capacity is akin to a suit against the United States itself.[56] Such suits are barred by sovereign immunity—and thus lack subject matter jurisdiction—unless the United States has expressly waived its immunity and consented to be sued.[57] Hale has not alleged or shown that the United States has waived its sovereign immunity for *Bivens* claims,

---

[54] *See id.* (citations omitted); *see also Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Muniz*, 149 F.4th at 265 ("At bottom, Muniz's *Bivens* claim fails because an alternative remedy existed and was made available to him.").
[55] *See* Doc. 1 at 3 ¶ 6.
[56] *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).
[57] *See Treasurer of N.J.*, 684 F.3d at 395-96.

13

and thus he has failed to establish subject matter jurisdiction for any official capacity *Bivens* claim asserted against Getz.[58] That claim, therefore, must be dismissed under 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from an immune defendant and under Section 1915A(b)(1) as legally frivolous.

### D.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[59] Here, leave to amend will be denied as futile.[60] Hale's First Amendment retaliation claims are foreclosed by settled Supreme Court precedent; his Eighth Amendment claim seeks an extension of *Bivens* that is both judicially disfavored and unwarranted under the circumstances; and his official capacity claim is legally frivolous, as the United States is plainly immune from his *Bivens* claims. Finally, any claim seeking prospective injunctive relief against Getz[61] must be dismissed as moot, as Hale has been transferred to a different federal institution.[62]

---

[58] *See Chinchello v. Fenton*, 805 F.2d 126, 130 n.4 (3d Cir. 1986); *Tucker v. Sec. Health & Human Servs.*, 588 F. App'x 110, 115 (3d Cir. 2014) (nonprecedential).

[59] *Grayson*, 293 F.3d at 114.

[60] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

[61] *See* Doc. 1 at 7-8.

[62] *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss with prejudice Hale's *Bivens* complaint against Getz pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to plausibly state an individual-capacity claim for relief and because his official capacity claim is legally frivolous. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge